IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **EMILY D. JEWELL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  Case No. 23-CV-148-GLJ |
| | ) |
| **MARTIN O'MALLEY,**[1] | ) |
| **Commissioner of the Social** | ) |
| **Security Administration** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Claimant Emily D. Jewell requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kijakazi as the Defendant in this action.

[s]he is not only unable to do [her] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton*, 79 F.3d at 1009. The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Univ. Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was twenty-seven years old at the time of the administrative hearing. (Tr. 55, 250). She completed high school and has past relevant work as a housekeeper. (Tr. 59, 320). Claimant alleges an onset date of October 3, 2019, due to limitations imposed by seizures and the frequent dislocation of her knees. (Tr. 266, 319).

## Procedural History

On June 8, 2021, Claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, as well as supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. (Tr. 250-62, 266-69). On October 6, 2022, ALJ Doug Gabbard, II, held an administrative hearing and determined Claimant was not disabled on October 19, 2022. (Tr. 31-78). The Appeals Council denied review, making the ALJ's opinion the Commissioner's final decision for purposes of this appeal. (Tr. 1-7); *See* 20 C.F.R. § 404.971.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. (Tr. 33-34). At step one the ALJ found Claimant had engaged in substantial gainful activity between Claimant's alleged onset date of October 3, 2019, and April 2020; however, the ALJ concluded there had been a continuous 12-month period after April 2020 during which

Claimant did not engage in substantial gainful activity. (Tr. 33-34). At step two, he determined that Claimant had the severe impairments of arthritis, idiopathic seizures, chronic pain secondary to bilateral knee chondromalacia patellae and dislocation, depressive/bipolar disorder, and anxiety/obsessive disorder. (Tr. 34). He found at step three that Claimant did not meet any Listing. (Tr. 34-37). At step four, he found Claimant had the residual functional capacity ("RFC") to perform light work except that she could not climb ladders/ropes/scaffolds and must avoid hazards such as open flames, unprotected heights, and dangerous moving machinery. (Tr. 38). Due to psychologically-based limitations, the ALJ found Claimant could perform simple work, involving only one- or two-step non-detailed tasks, and engage in occasional contact with supervisors, coworkers, and the general public, but would work best alone and tolerate only occasional well-explained work place changes. (Tr. 38). The ALJ also found Claimant would need regular work breaks every two hours and could not perform fast-paced work. (Tr. 38). The ALJ then concluded that Claimant could return to her past relevant work as a housekeeper (DICOT § 323.687-014), and thus found Claimant was not disabled. (Tr. 45). Alternatively, the ALJ determined that even if Claimant could not return to her past relevant work, she was nevertheless not disabled because there was work, she could perform in the national economy, *i.e.*, copy clerk (DICOT § 207.685-014), mail room clerk (DICOT § 209.687-026), and general office helper (DICOT § 239.567-010) (Tr. 45-47).

Review

Claimant contends that the ALJ erred by: (1) not conducting the proper *Winfrey*[3] analysis in finding Claimant could return to her past work as a housekeeper, and (2) relying on vocational expert ("VE") testimony at step five that was inconsistent with the Dictionary of Occupational Titles ("DOT").  The Court finds merit in Claimant's first proposition but concludes any error by the ALJ was harmless. Thus, the decision of the ALJ is AFFIRMED.

The relevant medical evidence reveals that Claimant sought treatment for seizures and subsequently underwent a brain CT in January 2017, but it was unremarkable. (Tr. 587). Following a motor vehicle accident in early 2018, Claimant underwent another brain CT scan which revealed no acute intracranial abnormalities. (Tr. 574). In August 2018 Claimant established care with Misty Branam, DO, who assessed Claimant with seizures. (Tr. 631). Claimant did not receive treatment for her seizures again until 2022, at which point she was diagnosed with epilepsy. (Tr. 631-38).

In September 2018, Claimant established care with orthopedic Dr. Patrick Gannon, and examination of Claimant's knees revealed a "grossly unstable left patellofemoral joint with spontaneous lateral dislocation with" range of motion. (Tr. 511-17). Claimant was assessed with recurrent dislocation of the left knee patella, chondromalacia patella of the left knee, and synovitis and tenosynovitis, unspecified, and a Fulkerson osteotomy of the left knee was performed on October 3, 2018. (Tr. 511-18, 555).  At post-operative follow-

---

[3] *Winfrey v. Charter*, 92 F.3d 1017 (10th Cir. 1996).

up visits Claimant was full weight bearing and x-rays of Claimant's left knee revealed a stable appearance. (Tr. 502). However, range of motion exercises revealed a very unstable patellofemoral joint. (Tr. 502-06). Claimant next visited Dr. Gannon in April 2021 and reported two dislocations of her knee since undergoing the Fulkerson osteotomy. (Tr. 522). Examination of Claimant's right knee revealed normal stability, alignment, tone, strength, range of motion, and a normal gait. (Tr. 544). Conversely, Claimant's left knee exhibited tenderness, abnormal range of motion, and pain with active and passive range of motion. (Tr. 544). X-rays at this time indicated Claimant's right knee exhibited a lateral patellar tilt, but her left knee appeared well remodeled with no tilt. (Tr. 518). Dr. Gannon recommended Claimant use an exercise bike to address her concerns. (Tr. 545).

In August 2021, Dr. Theresa Horton, Ph.D., completed a mental status examination of Claimant. (Tr. 597). Dr. Horton noted upon arrival Claimant was able to ambulate without assistance or an unusual gait, and "appeared to sit comfortably." (Tr. 600). Dr. Horton diagnosed Claimant with generalized anxiety disorder, panic disorder, social anxiety disorder, obsessive compulsive disorder, and unspecified bipolar disorder. (Tr. 601). She concluded Claimant was "capable of understanding, remembering and managing mostly simple and routine, and perhaps at times somewhat more complex instructions and tasks. . . Deficits in concentration do appears [sic] associated to low productivity and error rate. She does not appear to cope well with stressors. Stress then appears associated to seizure activity and this becomes a viscous cycle. She does not appear to adjust well in areas that are fact paced and/or densely populated and appears to have begun to struggle to adapt in most other settings as well." (Tr. 601).

State reviewing physicians determined initially and upon review that Claimant could perform light work but must avoid all exposure to hazards and may never climb ladders, ropes, or scaffolds. (Tr. 94-95, 114-17). Additionally, state agency psychological consultants determined initially and upon review that Claimant can understand, recall, and perform simple, one- to two-step, tasks with routine supervision, and maintain concentration, attention, pace and persistence for at least two hours at a time with reasonable breaks throughout the day with intermittent periods of moderate compromised concentration, attention, pace, and persistence. (Tr. 101, 121). The psychological consultants further found Claimant can relate to supervisors and peers on a superficial work basis but not work well in a densely populated setting, tolerate working in the presence of the general public with brief work/task related interactions so long as frequent conversation or communication is not needed, and adjust to some changes in a usually stable work environment. (Tr. 101, 121).

At the administrative hearing Claimant testified that she worked as a housekeeper in 2019 and 2020 and would lift between five and ten pounds through the course of her employment. (Tr. 63). As to her seizures, she stated they began when she was a teenager and have become more severe and frequent with age. (Tr. 65-66). She indicated she experienced seizures most mornings and sleeping is the only thing that alleviates her seizures. (Tr. 65-66, 71). In regard to her knees, Claimant testified they often dislocate in the morning. (Tr. 65).

In his written opinion at step four, the ALJ summarized Claimant's hearing testimony and extensively discussed the medical evidence of record. (Tr. 38-45). He then

found the Claimant's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the treatment records. (Tr. 40-43). The ALJ found the opinions of the state agency medical consultants persuasive and consistent with the medical records. (Tr. 44). He found the opinion of the psychological consultants mostly persuasive at the reconsideration level and found Dr. Horton's opinion that Claimant is capable of simple work mostly persuasive because these opinions were consistent with Claimant's history of depression, anxiety, and difficulty interacting with others.[4] (Tr. 44-45).

I. **Step Four Evaluation**

Claimant first asserts that the ALJ erred at step four by finding she could return to her past work as a housekeeper without performing the proper analysis in accordance with *Winfrey v. Charter*, 92 F.3d 1017 (10th Cir. 1996). Under *Winfrey*, there are three distinct phases to step four. *Id.* at 1023. The ALJ must first establish Claimant's RFC, then determine the physical and mental demands of her past relevant work ("PRW"), and finally decide if her RFC enables her to meet those demands. *Id.* The ALJ must specify his factual findings at each phase, and although the ALJ may rely on information provided by a VE, "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform [her] past relevant work." *Id.* at 1025.

---

[4] The ALJ intimates that he found the psychological consultant's opinion at the initial level unpersuasive. (Tr. 44). It seems this is based on his understanding that, at the initial level, the psychological consultant found Claimant's mental impairments to be non-severe. (Tr. 44). However, the record reflects that at both the initial and reconsideration level Claimant was found to have the severe impairments of "anxiety and obsessive-compulsive disorders" and "depressive, bipolar and related disorders." (Tr. 91, 111, 128).

*RFC Formulation*.   Claimant asserts that the ALJ erred in formulating his RFC by finding that Claimant's severe knee impairments required no postural limitations pertaining to Claimant's ability to kneel and squat. *See, e.g.*, *Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.'"). Contrary to Claimant's argument, the ALJ discussed all of the evidence related to Claimant's knees and gave reasons for reaching his RFC. *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine an RFC within that category.'") (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). The evidence does not reflect that Claimant had further postural limitations than those posed in the RFC and Claimant points to no evidence indicating further limitations were necessary. The ALJ clearly considered *all* the evidence in the record pertaining to Claimant's knees including, *inter alia*, the 2017 x-ray of Claimant's left knee, the surgical operations conducted on Claimant's left knee in 2019, the post-operative visits reflecting Claimant responded well to the surgery, and the 2021 x-rays which showed a titled patella in Claimant's right knee. (Tr. 41-43). The ALJ concluded Claimant's "allegations of an inability to sit, stand, walk, or stoop and the need to alternate sitting and standing are also not entirely consistent with the evidence[,]" further noting Claimant had received minimal treatment since her 2019 surgery, post-operative imaging of her left knee revealed stable appearance, and that she ambulated normally and was able

to sit comfortably at her 2021 consultative psychological examination. (Tr. 41-43). The ALJ's opinion clearly indicates he adequately considered the medical evidence of record, and the Court can follow the ALJ's reasoning as to why Claimant's knee impairments did not warrant any additional postural limitations. *Richard v. Berryhill*, 2018 WL 920651, at *2 (W.D. Okla. Feb 16, 2018) ("a decision of less-than-ideal clarity' should be upheld [where] the agency's path may be reasonably be discerned.") (internal citations and quotations omitted). The gist of Claimant's argument here is that the Court should reweigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency.").

<u>Demands of Past Relevant Work</u>. Claimant next contends the ALJ erred at the second phase of the *Winfrey* analysis by failing to elicit adequate evidence about the demands of Claimant's PRW. In determining the demands of Claimant's past work, the ALJ may rely upon the testimony of the vocational expert. *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003). Here, the VE testified as to the exertional and skill level of Claimant's PRW but made no mention of any other physical or mental requirements. The Court finds this insufficient to meet the demands of phase two of the *Winfrey* analysis at step four. *Sissom v. Colvin*, 512 Fed. Appx. 762, 768-69 (10th Cir. 2013) (the ALJ "failed to develop the record with 'factual information' regarding the Claimant's past relevant work' by relying solely on VE testimony as to the exertional level and skill level of Claimant's past relevant work because such "limited testimony . . . is insufficient to determine the physical and mental work demands of [the claimant's past relevant work]."

(citing *Winfrey*, 92 F.3d at 1024). Thus, the ALJ was without any evidence as to the physical and mental demands of Claimant's past relevant work as it is customarily performed in the national economy. *See, e.g.*, *Westbrook v. Massanari*, 26 Fed. Appx. 897, 903 (10th Cir. 2002) (finding that remand under *Winfrey* is appropriate where the record is "devoid of even any mention of the demands of past relevant work.").

Generally, this would be reversible error under *Winfrey* but, here, it is harmless in light of the ALJ's alternative step five findings that other jobs exist in significant numbers that Claimant could perform. As demonstrated below, the ALJ's step five findings were proper, and thus his *Winfrey* error is harmless. *Martinez v. Astrue*, 316 Fed. Appx. 819, 824 (10th Cir. 2009) ("Because we conclude, as discussed in the next section that the ALJ's step-five finding was proper, we agree with the district court that the ALJ's *Winfrey* error was harmless. Contrary to Ms. Martinez's argument, her capacity to perform the specific requirements of a past sedentary job has no bearing on her capacity to perform different sedentary jobs at step five because the ALJ made findings regarding her specific limitations for step-five purposes.").

**II.   Step Five Evaluation**

Next, Claimant argues the ALJ erred at step five by failing to resolve a conflict between the jobs assigned by the VE and the RFC determination limiting Claimant to simple one- or two-step non-detailed tasks. This argument is without merit to the extent the ALJ assigned jobs requiring reasoning level two.

Under Social Security Ruling 00-4p, "[w]hen vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict

before relying on the VE or VS evidence to support a determination or decisions that the individual is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified." 2000 WL 1898704, at *4 (Dec. 4, 2000). Here, although the VE did not identify any conflict between their testimony and the DOT, Claimant contends the ALJ's RFC limiting Claimant to simple, one- to two-step tasks, precludes the reasoning level two and three jobs assigned by the VE.

The VE identified the jobs of copy clerk (DICOT § 207.685-014), mail room clerk (DICOT § 209.687-026), and general office helper (DICOT § 239.567-010). (Tr. 45-47). The jobs of copy clerk and general office helper have a reasoning level of two, which is defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] deal with problems involving a few concrete variables in or from standardized situation." DICOT §§ 207.685-014 & 239.567-101. However, the job of mail clerk has a reasoning level of three which requires the ability to "apply commonsense understanding to carry out instruction furnished in written, oral, or diagrammatic form [and] deal with problems involving several concrete variable in or from standardized situations."  DICOT § 209.687-026

The Tenth Circuit instructs that jobs with a reasoning level of 3 are inconsistent with an RFC limiting a claimant to "simple and routine work tasks." *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). In contrast, "level-two reasoning appears more consistent" with such an RFC. *Id.*; *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (rejecting the argument that "simple, repetitive and routine work" should be

construed as a limitation to jobs with a reasoning level of one). This Court and others have routinely determined that level-two reasoning is consistent with simple, one- to two-step tasks. *See*, *e.g.*, *Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. Mar. 12, 2017) (finding "simple work" consistent with a reasoning level of two.); *Larry T.R. v. Kijakazi*, 2023 WL 2810624, at *3 (D. Kan. Apr. 6, 2023) (finding "non-detailed routine and repetitive tasks" consistent with reasoning level two.); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with reasoning-level rating of one. We disagree."). Thus, the jobs of copy clerk and general office helper are not inconsistent with the ALJ's RFC determination but, because the job of mail clerk requires a reasoning level of three, it is inconsistent with the ALJ's RFC. *See* DICOT § 209.687-026. However, this is harmless error so long as the remaining jobs exist in significant numbers.

"[T]here is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant, but the number appears to be somewhere between 100 . . . and 152,000, . . . to be sufficient so far for application of harmless error." *Evans v. Colvin*, 640 Fed. Appx. 736 (10th Cir. 2016). In this case, the two remaining jobs meet this threshold. *See* DICOT §§ 207.685-014 (copy clerk, 90,000 jobs) and 239.567-010 (general office helper 820,000 jobs). Thus, the ALJ's error in assigning the job of mail room clerk is harmless.

The ALJ noted the medical records available in this case, gave reasons for his RFC determination, and ultimately found that Claimant was not disabled. *See Hill*, 289 Fed.

Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (quoting *Howard*, 379 F.3d at 949). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment was made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1545 & 416.946). The essence of Claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the Court simply may not due. *See, e.g.*, *Casias*, 933 F.3d at 800. Accordingly, the decision of the Commissioner is AFFIRMED.

## Conclusion

In summary, the Court finds that the correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore supported by substantial evidence. The decision of the Commissioner is accordingly hereby AFFIRMED.

**DATED** this 30th day of July, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**